IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

WESLEY G. FELL, JR.
     Plaintiff,

v.                             Case No.: 3:15cv541/MCR/EMT

UNITED STATES OF AMERICA,
     Defendant.
_____/

## REPORT AND RECOMMENDATION

Upon referral from the district court (*see* ECF No. 35), this cause is before the undersigned on Plaintiff's "Motion to Determine Reasonable Deposition Fee and for Attorney Fees," with attachments, and an additional exhibit filed in support thereof (ECF No. 32 & 32-1–32-9; ECF No. 33), as well as Defendant's response in opposition thereto, with attachments (ECF No. 34 & 34-1–34-4).

<u>Relevant Background</u>

Each party has retained experts in this Federal Tort Claims Act case, which stems from allegedly negligent care rendered to Plaintiff by Dr. John Saeva, a podiatrist at the Veterans Administration. Plaintiff retained Alan Rothstein, a podiatrist, and Defendant retained Andrew H. Borom, M.D., an orthopedic surgeon. Dr. Rothstein has been deposed. He charged an hourly rate of $400.00 both for deposition preparation time and the deposition itself. Plaintiff states he paid for Dr.

Rothstein's deposition preparation time, noting "that the practice among attorneys in this district is that the party taking an opposing party's expert's deposition pays only for the deposition time while the party retaining the expert pays for the preparation time" (ECF No. 32 at 3), and Defendant apparently paid for the time Dr. Rothstein spent in deposition. Dr. Borom has also been deposed, and his fee for such is at issue now.

<u>Pertinent Facts Relating to Dr. Borom's Deposition</u>

The discovery deadline in this case was January 20, 2017, and in or about December 2016 Dr. Borom's deposition was scheduled for January 6, 2017, in Tallahassee (where Dr. Borom practices). On December 20, 2016, Defendant's counsel advised Plaintiff's counsel that Dr. Borom required a $2,000 prepayment before being deposed. On December 29, 2016, Plaintiff's counsel sent Dr. Borom a check for $2,000, with an accompanying letter that stated "[e]nclosed please find my firm check in the amount of $2,000 representing your charge for the video deposition scheduled in this case . . . ." (ECF No. 32 at 2; ECF No. 32-1). Plaintiff's counsel indicated to Defendant's counsel in an e-mail dated the same day, December 29, that he was sending the $2,000 check to Dr. Borom "under protest[1]" (ECF No. 32-2). Also

---

[1] A review of the email in its entirety suggests that counsel's "protest" was to the requirement for prepayment, not necessarily the amount; however, the letter to Dr. Borom that

on December 29, Plaintiff's counsel received from Defendant's counsel a copy of Dr.

Borom's office policy and fee schedule. Plaintiff did not attach a copy of the policy

or schedule to the instant motion, but he describes them as stating that "Dr. Borom

wishes to charge $2,000 per hour for a videotaped deposition" and providing a place

for "an attorney taking his deposition to sign agreeing to the policy" (ECF No. 32 at

2).[2] The policy sets forth the requirement for a $2,000 prepayment for a videotaped

deposition; notes that the prepayment will include Dr. Borom's deposition preparation

time, as well as the first hour of his deposition; and that any hour beyond the first will

be billed at $2,000 per hour (*see* ECF No. 34-1 at 1–2). Plaintiff's counsel did not

sign the policy though, as previously noted, he submitted the initial payment of

$2,000. Counsel explains that he proceeded in this manner because discovery was

soon closing, and he did not wish to involve the court in what should have been a

simple matter to resolve and, apparently, a matter he thought would indeed be

resolved by the parties without the court's involvement (*see* ECF No. 32 at 10).

---

accompanied counsel's $2,000 check suggests that the $2,000 would cover Borom's full charge for the deposition (*see* ECF No. 32-1) and, as noted below, counsel did not sign a proposed fee agreement supplied by Dr. Borom's office prior to deposing him, which agreement would have obligated counsel to additionally pay Dr. Borom $2,000 per hour for any hour beyond the first hour of his deposition.

[2] Defendant attached a copy of Dr. Borom's fee schedule and office policy to its response (ECF No. 34-1). The court presumes that these documents are the same as those provided to Plaintiff's counsel on December 29.

Dr. Borom was deposed on January 6, 2017, and his deposition lasted three hours. Following the deposition, Dr. Borom's office assistants called Plaintiff's counsel or sent him handwritten notes requesting an additional $4,000. They also provided additional copies of Dr. Borom's office policy, but Plaintiff's counsel did not receive an actual bill or invoice. On February 9, in response to the messages he had received from Dr. Borom's staff, Plaintiff's counsel wrote Dr. Borom a letter, in which he explained that a fee in the total amount of $6,000 was unreasonably high, and he offered a compromise, namely, to provide an additional $1,750 "for the time [Dr. Borom] spent testifying" (ECF No. 32 at 3; ECF No. 32-3; ECF No. 32-4).[3] Plaintiff's counsel included a check in the amount of $1,750, even though he felt then, and feels now, that the offer was more than what he should have been required to pay.[4] He offered this amount, however, in an effort to resolve the issue without involving the court.

---

[3] Plaintiff's counsel explained in the letter, as he has in the instant motion, that he is not obligated to pay for deposition preparation time. Thus, he contended that the total fee he offered (i.e., $3,750) equated to an hourly rate of $1,250 for Dr. Borom's three-hour deposition ($3750 \div 3 = 1250$). Counsel decided upon this hourly rate after reviewing Dr. Borom's fee schedule, which shows that Dr. Borom charges $5,000 for a four-hour block of time—or $1,250 per hour—for trial attendance (*see* ECF No. 32-3; ECF No. 34-1 at 1).

[4] The Government is evidently paying Dr. Borom an hourly rate of $500.00 (*see* ECF No. 33 at 29, 31).

Dr. Borom rejected the offer by Plaintiff's counsel in a condescending and antagonistic letter, which included among other things a threat to sue Plaintiff's counsel and to impose late fees and interest charges on the outstanding $4,000 balance (*see* ECF No. 32-5). Dr. Borom also returned the $1,750 check to Plaintiff's counsel with the word "N O P E" handwritten across the front of the check in large capital letters (*id.*).

Plaintiff's counsel then attempted to resolve this matter with Defendant's counsel, but defense counsel took the position that because Plaintiff's counsel was aware of the office policy and fee schedule before he deposed Dr. Borom, but nevertheless proceeded with the deposition, he has forfeited his right to ask this court to set a reasonable deposition fee (a position Defendant's counsel repeats—and in fact, primarily relies upon—in response to the instant motion) (*see* ECF No. 32 at 4; ECF No. 34).[5]

Discussion

The court concludes that Plaintiff's counsel did not forfeit the right to protest the amount of Dr. Borom's fee by proceeding with the deposition. Initially, Plaintiff's

---

[5] Defense counsel additionally argues that if Plaintiff's counsel did not forfeit his right to object to Dr. Borom's fee, he has not properly supported his request that this court determine that an hourly rate of $400-500 is reasonable for Dr. Borom's deposition time (*see* ECF No. 34; *see also* ECF No. 32 at 11).

counsel did not sign Dr. Borom's fee schedule in the space provided for doing so and thus was not bound by it.[6]  Instead, Plaintiff's counsel sent a check to Dr. Borom in the amount of $2,000, but he advised Defendant's counsel he was doing so under protest, and he advised Dr. Borom that the amount "represent[ed] [his] charge for the [] deposition."  Moreover, Dr. Borom elected to proceed with the deposition even though the fee schedule had not been signed.  A reverse argument to the one put forth by Defendant could thus be made: *Dr. Borom* forfeited *his* right to enforce the terms of his fee agreement by proceeding with the deposition despite the lack of a signed fee agreement.  Furthermore, the court has no reason to doubt the assertion by Plaintiff's counsel that he proceeded with the deposition in light of the looming discovery deadline and his belief that this matter could be resolved without the court's involvement.

To be sure, given the parties' current positions and Dr. Borom's view of the matter, had Plaintiff's counsel elected to cancel the deposition in order to resolve the matter of his fee before deposing him, it is evident that this court would have been required to resolve it and, correspondingly, that the case would have been delayed. In the undersigned's view, these circumstances demonstrate that Plaintiff's counsel acted

---

[6] Had Plaintiff's counsel signed the document, he would have specifically been agreeing to "abide by the Fee Schedule" and all of its terms (*see* ECF No. 34-1).

prudently in proceeding with the deposition, with the hope that the parties could resolve the fee dispute on their own, and with the knowledge that failing to proceed would inevitably result in the extension of the discovery deadline and other related deadlines in this case. Stated differently, Plaintiff's counsel did his part to comply with the mandate of Rule 1 that the Federal Rules of Civil Procedure "should be construed, administered, and employed by the court *and the parties* to secure the just, *speedy*, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1 (emphases added).

Thus, the court will proceed to consider whether the fee demanded by Dr. Borom is reasonable. Rule 26(b)(4)(A) of the Federal Rules of Civil Procedure provides that "[a] party may depose any person who has been identified as an expert whose opinions may be presented at trial." Rule 26 further provides that "[u]nless manifest injustice would result, the court must require that the party seeking discovery: (i) pay the expert a reasonable fee for time spent in responding to discovery . . . ." Fed. R. Civ. P. 26(b)(4)(E)(i). The issue of what constitutes a "reasonable fee" has been widely litigated, and federal caselaw reflects that courts consider a variety of factors in determining a reasonable expert fee, including (1) the prevailing rate for a comparable, available expert; (2) the witness's area of expertise; (3) the education and training required for the opinion sought; (4) the nature, quality,

and complexity of the discovery responses provided; (5) the fee being charged to those who retained the expert; (6) the cost of living in the particular geographic area; (7) fees traditionally charged on related matters; and (8) any other factor likely to be of assistance to the court in balancing the interests implicated by Rule 26. *See, e.g.*, Brunarski v. Miami Univ., No. 1:16-CV-311, 2017 WL 713691, at *2 (S.D. Ohio Feb. 23, 2017) (citing Jochims v. Isuzu Motors, Ltd., 141 F.R.D. 493, 495 (S.D. Iowa 1992)); Weimer v. Honda of Amercia, Mfg., Inc., No. 2:06–CV–844, 2008 WL 5142418 (S.D. Ohio Dec. 5, 2008); Casiano v. Target Stores, No. CV 2006-6286(NG)(MDG), 2008 WL 3930558 (E.D.N.Y. Aug. 21, 2008). The list of factors that may be relevant can vary from case to case.

The caselaw also "reflects widespread judicial criticism of blatant attempts to gouge opposing parties with steep fees, and an activist approach in reducing fees deemed to be exorbitant." Brunarski, 2017 WL 713691, at *1 (citing, among other cases, Burgess v. Fischer, 283 F.R.D. 372 (S.D. Ohio 2012) (determining that $360.00 per hour was a reasonable rate for the deposition of an expert whose credentials included both an "M.D." and a "Ph.D.")). In Weimer, 2008 WL 5142418, at *1–2, the court deemed reasonable an hourly rate of $250 for time spent in connection with a physician's deposition. The court noted that "many courts have authorized similar or greater rates for medical doctors." *Id.*, at *1 (citing Grady v.

<u>Jefferson Cy. Bd. of Cy. Comm'rs</u>, 249 F.R.D. 657, 657 (D. Colo. 2008) ($600 per hour for neurosurgeon); <u>Casiano</u>, 2008 WL 3930558, at *2 ($400 per hour for experienced board-certified orthopedist); <u>United States v. New York Metro. Transp. Auth.</u>, Nos. 04-CV-4237 (SLT) (MDG), 04-CV-2331 (SLT) (MDG), 2007 WL 1827519, at **1–2 (E.D.N.Y. June 22, 2007) (reducing hourly rate of "well qualified" expert psychiatrist from $400 to $350); <u>Edin v. Paul Revere Life Ins. Co.</u>, 188 F.R.D. 543 (D. Ariz. 1999) ($450 per hour for orthopedic surgeon); <u>Norman v. City of Lorain, Ohio</u>, No. 1:04 CV 913, 2006 WL 5249724 (N.D. Ohio 2006) ($300 per hour for treating physician)); *see also, e.g.*, <u>Muoio v. Zubowski</u>, No. 01 Civ. 9556, 2003 WL 22111623, at *1 (S.D.N.Y. Apr. 16, 2003) (reducing hourly rate of expert plastic surgeon from $1,000 to a blended rate of $400); <u>Frederick v. Columbia Univ.</u>, 212 F.R.D. 176, 177 (S.D.N.Y. 2003) (reducing hourly rates for toxicologist with medical degree from $975 to $375 for his deposition and no more than $200 per hour for travel time).

Finally, various courts have concluded that "the burden of proving the reasonableness of an expert's fees lies with the party seeking reimbursement." <u>Fiber Optic Designs, Inc. v. New England Pottery, LLC</u>, 262 F.R.D. 586, 589 (D. Colo. 2009) (citing <u>Se-Kure Controls, Inc. v. Vanguard Prods. Group, Inc.</u>, 873 F. Supp. 2d 939, 957 (N.D. Ill. 2012)); *see also, e.g.*, <u>Brunarski</u>, 2017 WL 713691, at *2; <u>Ball v.</u>

LeBlanc, No. 13-00368-BAJ-SCR, 2015 WL 5793929, at *1 (M.D. La. Sept. 30, 2015). However, ultimately, "[w]hat fee is reasonable falls within the discretion of the Court." Weimer, 2008 WL 5142418, at *1–2 (citations omitted). Thus, although the eight factors listed above are certainly relevant to the determination of a reasonable fee and should be considered, in the end it is within the court's discretion to set an amount it deems reasonable.

The court, readily reaching its conclusion, finds that the fee demanded by Dr. Borom is unreasonably high. *See, e.g.*, Norman, 2006 WL 5249724, at *6 (finding doctor's "proposed fee of $2,000.00 for the first hour [of his deposition] and $750.00 for each hour thereafter" exorbitant).

Defense counsel himself does not even argue that the fee is reasonable but instead, essentially, relies on a "forfeiture of the right to object" argument and an alternative argument that Plaintiff's counsel has not established the reasonableness of the hourly rate he suggests ($400-500). The court has rejected Defendant's first argument and notes, as to the second argument, that the onus here might very well be on *Defendant* to establish the reasonableness of Dr. Borom's fee. *See, e.g.*, Fiber Optic Designs, Inc., 262 F.R.D. at 589 ("[T]he burden of proving the reasonableness of an expert's fees lies with the party seeking reimbursement."). But ultimately, as previously noted, the determination of a reasonable fee is up the court.

Case No.: 3:15cv541/MCR/EMT

Having considered the caselaw and the relevant factors set forth therein, including that Dr. Borom is an orthopedist, while Plaintiff's expert (who, as previously noted, was paid $400 per hour) is a podiatrist, and that Defendant is evidently paying Dr. Borom $500 per hour, the court determines that an hourly rate of $500 is reasonable under the circumstances of this case.

Conclusion

Dr. Borom is entitled to payment in the amount of $1,500 for the three hours he was deposed, based upon the court-determined hourly rate of $500. As Dr. Borom has already been paid $2,000, Plaintiff's counsel need not provide any additional funds to Dr. Borom. Dr. Borom, however, may retain the $500 balance to cover the unknown amount of time he spent preparing for the deposition.[7]

---

[7] The court is aware of the statement by Plaintiff's counsel that it is customary in this district for the party retaining an expert to pay for his or her deposition preparation time. Nevertheless, in this instance, the court finds it appropriate to allow Dr. Borom to retain the $500 balance. This is not a general finding as to who must pay for an expert's deposition preparation time. The court notes, however, that some courts have concluded that the party taking the expert's deposition must also pay for his or her preparation time, *see, e.g.*, Barnes v. District of Columbia, 272 F.R.D. 135, 136 (D.D.C. 2011) (citing the requirement of Rule 26(b)(4)(E)(i) that "the party seeking discovery [must] pay the expert a reasonable fee for time spent in responding to discovery . . . ."); Stewart v. City of Houston, No. H–07–4021, 2010 WL 1524015, at *1 (S.D. Tex. Apr. 14, 2010) ("Fees awarded under Rule 26(b)[] include time spent in preparing for a deposition, in traveling to the deposition, and in the deposition."), while other courts have reached an opposite conclusion. *See, e.g.*, Rock River Commc'ns, Inc. v. Universal Music Grp., 276 F.R.D. 633, 635 (C.D. Cal. 2011) (concluding that the deposing party need only pay for time spent in deposition, absent extenuating circumstances) (citations omitted); *see also, e.g.*, Borel v. Chevron U.S.A. Inc., 265 F.R.D. 275, 277 (E.D. La. 2010) (recognizing that federal courts "are split" on whether expert fees attributable to deposition preparation time can be shifted to the deposing party, concluding that "a slim majority" permits it, and collecting cases).

Accordingly, it is respectfully **RECOMMENDED** that:

Plaintiff's "Motion to Determine Reasonable Deposition Fee and for Attorney Fees" (ECF No. 32) be **GRANTED** to the extent that a fee in the total amount of $2,000 is deemed reasonable and sufficient to compensate Dr. Borom for matters related to his deposition in this cause.

**DONE AND ORDERED** this 9th day of June 2017.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**